UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COLBY ISTRE                                CIVIL ACTION

VERSUS                                     NO: 12–2054

MONTCO OFFSHORE, INC, ET AL                SECTION: "H"(3)

ORDER AND REASONS

    Before the Court is Third Party Defendant PT Schneider Electric Manufacturing Batam's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 186). For the following reasons, the Motion is GRANTED, and all claims against PT Schneider Electric Manufacturing Batam are DISMISSED WITHOUT PREJUDICE.

BACKGROUND

    Plaintiff Colby Istre filed this action asserting claims under the Jones Act and general maritime law. Plaintiff was allegedly injured during the course and scope of his employment with Defendant Montco while serving as a seaman aboard the vessel M/V LB PAUL. On the date of the alleged accident, Plaintiff Istre and several other crew members left the vessel in a small rescue boat. When they returned to the vessel, the crew of the LB PAUL attempted to hoist the rescue boat up to the main deck of the vessel.

1

During the hoist, the line on the winch system snapped, causing the boat and Plaintiff to fall back to the water. The boat allegedly fell on top of Plaintiff, causing serious injury.

Defendant Montco answered Plaintiff's complaint and filed a third-party complaint against Schat-Harding. Montco alleges that it contracted with Schat-Harding for the installation of the winch system, which allegedly failed. Plaintiff Istre then amended his complaint to assert a products liability claim directly against Schat-Harding. In response, Schat-Harding filed a third-party complaint against Schneider Electric, SA ("SESA"); Telemecanique; Schneider-Electric, USA; PT Schneider Electric Manufacturing Batam ("PT SEMB"), and additional third-party defendants who have not yet been served. Subsequently, SESA filed a Motion to Dismiss for lack of personal jurisdiction. On February 26, 2014, this Court granted SESA's motion to dismiss, finding that personal jurisdiction was lacking. Schat-Harding then embarked on a protracted effort to effect international service on PT SEMB, which was ultimately successful. On November 18, 2015, PT SEMB filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. While this Motion was pending, Plaintiff Colby Istre amended his complaint to assert a claim against PT SEMB. Accordingly, both Schat-Harding and Istre oppose PT SEMB's Motion. The court heard oral argument on January 13, 2016. At that time, the Court deferred ruling on the Motion.

## **LEGAL STANDARD**

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[1] When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction.[2] "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction has been established."[3]  "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings."[4] The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery.[5] Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.[6]  In the instant case, "these two inquiries merge into one because Louisiana's long-arm statute permits

---

[1] *Luv N'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[2] *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).
[3] *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983).
[4] *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).
[5] *Id.* (citing *Colwell Realty Invs. v. Triple T. Inns of Ariz.*, 785 F.2d 1330 (5th Cir. 1986)).
[6] *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

service of process coterminous with the scope of the due process clause."[7] "The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'" A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[8]

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction.[9] Specific personal jurisdiction exists (1) when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state; (2) the controversy arises out of or is related to those activities; and (3) the exercise of jurisdiction is fair, just, and reasonable.[10] General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action.[11]

---

[7] *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.2d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).
[8] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).
[9] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).
[10] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[11] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied."[12] The fairness inquiry is determined by analyzing several factors: (1) the burden upon the nonresident defendant of litigating in the forum state; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.[13]

## LAW AND ANALYSIS

This Court must determine whether PT SEMB has sufficient minimum contacts with Louisiana to warrant the exercise of specific personal jurisdiction. The parties do not dispute that a specific jurisdiction analysis is appropriate in this case. In order for the Court to exercise specific personal jurisdiction over PT SEMB, Schat-Harding must prove that (1) PT SEMB has purposefully directed contacts with Louisiana; (2) Schat-Harding's claim against PT SEMB arises out of those contacts; and, (3) the exercise of jurisdiction is fair and reasonable.[14] In an effort to meet its burden, Schat-Harding relies on the "stream of commerce" theory of personal jurisdiction.[15]

---

[12] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)).
[13] *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).
[14] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013).
[15] The "stream of commerce" theory of personal jurisdiction is the appropriate inquiry in cases, such as this one, which involve "a product sold or manufactured by a foreign defendant." *Ainsworth*, 716 F.3d at 177.

In order to exercise jurisdiction under this theory, the proponent of jurisdiction must prove that the defendant placed a product into the stream of commerce with the expectation that the product would be purchased by consumers in the forum state.[16]  Furthermore, Schat-Harding must clearly establish that the product actually arrived in Louisiana while it was still in the stream of commerce.[17]

In *World-Wide Volkswagen v. Woodson,*[18] the Supreme Court addressed the exercise of jurisdiction through the stream of commerce theory.  In that case, plaintiffs purchased an automobile in New York.[19]  Several months after purchasing the car, plaintiffs decided to move to Arizona.[20]  As plaintiffs were passing through Oklahoma, the car caught fire, causing serious injuries. Plaintiffs attempted to sue several entities in Oklahoma, including the New York-based dealer and the New York/New Jersey-based distributor of the car.[21]  The Supreme Court held that a court in Oklahoma could not constitutionally exercise jurisdiction over the dealer or the distributor under a stream of commerce theory.[22]  Specifically, the Court held that a consumer's unilateral post-sale act of transporting a final product to the forum state is not sufficient to justify the exercise of personal jurisdiction.[23]

---

[16] *Id.*
[17] *Id.*
[18] 444 U.S. at 288.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 299.
[23] *Id.* at 298.

6

In this case, the subject switch left the stream of commerce, at the latest, in Alabama. The switch at issue in this litigation was manufactured by PT SEMB in Indonesia. The switch was then shipped to an international distribution center in Evreux, France owned by Schneider Electric France SAS. From Evreaux, the switch traveled to a regional distribution center in Hungary owned by a Schneider subsidiary. The next several steps in the switch's path of travel are unclear. However, the switch was eventually sold to Schat-Harding in the Czech Republic by a Czech corporation, which presumably purchased the switch from a Hungarian Schneider subsidiary. Schat-Harding incorporated the switch into the winch system in the Czech Republic and shipped it to Bayou LaBatre, Alabama. The winch system was finally installed on the M/V LB PAUL in Alabama in January of 2009. After the installation was complete, Montco took possession of the vessel in Alabama and placed the LB PAUL back into service. The accident involving Plaintiff occurred in Louisiana in October of 2010, approximately 21 months after the winch system was installed.

This Court's earlier decision dismissing SESA based on lack of personal jurisdiction is controlling here.[24] In order to exercise specific personal jurisdiction over a defendant under a stream of commerce theory, the product at issue must have reached the forum state while still in the stream of commerce.[25] This is because, for the purpose of specific jurisdiction, it is necessary that the cause of action against the defendant arise out of its

---

[24] Doc. 155.
[25] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).

contacts with the forum state.[26]  Precisely when the switch left the stream of commerce is a difficult question that the Court need not resolve today.  The stream of commerce generally ends where the product is purchased by the end consumer.[27]  This Court finds that under under any interpretation of the stream of commerce theory the switch left the stream of commerce before it arrived in Louisiana.  Montco's unilateral post-sale act of transporting the LB PAUL to Louisiana is insufficient to justify the exercise of personal jurisdiction.  The switch exited the stream of commerce in Alabama at the latest, where the winch system was installed on the LB PAUL.  Accordingly, this Court lacks personal jurisdiction over PT SEMB.

Schat-Harding and Istre argues that the fact that PT SEMB sold other limit switches in Louisiana should subject it to personal jurisdiction here.  Specifically, they point to the fact that various Schneider entities have generated over $85,000 in revenue through the sales of various Telemecanique brand sensors in Louisiana.  These arguments, however, ignore the fact that in order to make out a prima facie case of specific jurisdiction there must be a connection between PT SEMB's conduct and this cause of action.  The fate of other limit switches is irrelevant to a specific jurisdiction analysis if it cannot be shown that the product that is the subject of the instant litigation reached Louisiana while in the stream of commerce.[28]

---

[26] *Ainsworth*, 716 F.3d at 177.
[27] *Seiferth*, 472 F.3d at 273.
[28] *See Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 216 (5th Cir. 2000) ("This is more akin to a general jurisdiction argument than to a specific jurisdiction argument. Appellants make no attempt to link Appellees' contacts with [the forum state] and the instant litigation. This is a link that specific jurisdiction requires.").

Schat-Harding and Istre's arguments are better suited to a general jurisdiction analysis; however, a party may not rely on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant.[29]  Accordingly, because the subject limit switch left the stream of commerce at the latest in Alabama where it reached the last possible end consumer, there is no nexus with the forum state to support specific jurisdiction.  Any contacts that PT SEMB had with Louisiana are not the subject of the instant litigation and cannot be used as a basis for specific personal jurisdiction.

The Court finds the unreported Fifth Circuit case of *Eddy v. Printers House (P) Ltd.* especially persuasive in this matter.[30]  There, the Court considered whether it had personal jurisdiction over the defendant, an Indian manufacturer of a printing press.[31]  The press at issue was manufactured in India and shipped to a consumer in Mississippi.[32]  Through the unilateral action of the consumer, the press eventually ended up in Texas, where the plaintiff's injury occurred.[33]  The court, finding that the press left the stream of commerce when it was installed in Mississippi, held that personal jurisdiction was lacking in Texas.[34]  Importantly, evidence that the defendant had sold other products directly to Texas buyers was of no moment to the court's specific jurisdiction analysis, as there was no evidence that the spare

---

[29] *Id.*
[30] 627 Fed. Appx. 323 (5th Cir. 2015).
[31] *Id.* at 327.
[32] *Id.*
[33] *Id.*
[34] *Id.*

9

parts were actually used in the press or that they caused his injury.[35] Here, just as in *Eddy*, the fate of other limit switches manufactured by PT SEMB is irrelevant if Plaintiffs cannot demonstrate that the offending limit switch entered Louisiana in the stream of commerce.[36]

## CONCLUSION

     For the foregoing reasons, PT Schneider Electric Manufacturing Batam's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED, and all claims against PT Schneider Electric Manufacturing Batam are DISMISSED WITHOUT PREJUDICE.

     New Orleans, Louisiana, this __22nd__ day of March, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[35] *Id.*

[36] The Court has previously rejected arguments based in the fact that the subject limit switch passed through the Port of New Orleans en route to Alabama. For a full discussion of this issue, see Doc 155.